## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

GLORIA M. GAVIRIA, Individually and
On behalf of all others similarly situated,

           CASE No.:

      Plaintiff,

           CLASS ACTION COMPLAINT

v.

NEWREZ LLC d/b/a
SHELLPOINT MORTGAGE SERVICING,

           DEMAND FOR JURY TRIAL

      Defendant.

_____/

Plaintiff, GLORIA M. GAVIRIA (hereinafter "Plaintiff"), by and through undersigned counsel, brings this action against Defendant, NEWREZ LLC d/b/a Shellpoint Mortgage Servicing ("Defendant" or "SHELLPOINT"), for monetary relief, including attorney's fees and costs, and respectfully demands a judgment against Defendant on all claims pled against it in this Complaint. Plaintiff brings this action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, its implementing regulation, Regulation X, 12 C.F.R § 1024 ("Regulation X"), and the Florida Consumer Collections Practices Act ("FCCPA"), Fla. Stat. § 559.72, *et seq.*, for multiple violations of the FCCPA, RESPA, and Regulation X. The ultimate facts supporting Plaintiff's entitlement to the requested relief are articulated in the numbered paragraphs below.

## **INTRODUCTION**

1.     This is a putative class action brought under rule 23 of the Federal Rules of Civil Procedure by Plaintiff, a consumer, on her own behalf and on behalf of all others similarly situated, for Defendant's pattern and practice of violations of RESPA, 12 U.S.C. §§ 2601, et seq., and its

implementing regulation, Regulation X, 12 C.F.R. § 1024, and the FCCPA, Fla. Stat. § 559.72, *et seq*.

2.     Specifically, Plaintiff seeks the remedies as provided in RESPA § 2605(f)(1) for Defendant SHELLPOINT's failure to comply with sections §§ 2605(k)(1)(C) and (E) of RESPA; and for its violations of sections § 1024.35(b)(6) and § 1024.35(e)(1), under Regulation X.

3.     All conditions precedent to the filing of this action have been satisfied or waived.

## JURISDICTION AND VENUE

4.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges federal claims and requires the resolution of substantial questions of federal law.

5.     This case is a civil action arising under the laws of the United States over which this Court has original jurisdiction under 28 U.S.C. § 1331.

6.     This Court has subject matter jurisdiction under RESPA and Regulation X pursuant to 12 U.S.C. § 2614.

7.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims brought under the FCCPA, Fla. Stat. § 559.72, *et seq*.

8.     Venue of this action is proper in the United States District Court for the Southern District of Florida under 12 U.S.C. § 2614 because it is the District in which the property involved in this action is located and this is the District where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

## PARTIES

9.     At all times material hereto, Defendant NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING was, and is, a Florida Foreign Limited Liability Company with its principal place of business located in 1100 Virginia Drive, Ste 125, Fort Washington, PA 19034,

with SHELLPOINT MORTAGE SERVICING's being a corporation with a principal place of business in Greenville, South Carolina.

10.     Defendant is duly licensed to transact business in the State of Florida and lists its registered agent as Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525.

11.     At all times material to this action, Defendant regularly transacted business in the State of Florida.

12.     Plaintiff, Gloria M. Gaviria is a natural person residing in Fort Lauderdale, Florida.

13.     At all times material hereto, Plaintiff owned a residential property located at 2406 Flamingo Lane, Ft. Lauderdale, Florida 33312, which is located in Broward County, Florida ("Subject Property").

14.     The Subject Property is a residential single-family home structure and is Plaintiff's primary residence.

15.     On or about March 1, 2007, Plaintiff, the mortgagor, executed a promissory note and mortgage in favor of Lehman Brothers Bank ("Subject Loan"), for the purchase of the Subject Property.

16.     The current owner of the Subject Loan on the Subject Property is believed to be FHLMC REO, located at, 1100 Virginia Drive, Ste 125, Fort Washington, PA 19034.

17.     The Subject Loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b) and referred to by Defendant as account number ******8425.

18.     At all times material hereto, Defendant SHELLPOINT is and was a loan servicer as that term is defined in 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b).

19.     Plaintiff is a "consumer" as defined by Florida Statute §559.55(8) as she is a natural person obligated or allegedly obligated to pay any debt, specifically, the Subject Loan.

20.     Plaintiff's Subject Loan is a "debt" as defined by Florida Statute §559.55(6) as it is an obligation or alleged obligation of Plaintiff to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of her home.

21.     Plaintiff fell delinquent on the Subject Loan.

22.     Defendant SHELLPOINT is the servicer for NewRez LLC d/b/a Shellpoint Mortgage Servicing and upon information and belief is one and the same with entity identified as by SHELLPOINT as FHLMC REO, located at 1100 Virginia Drive, Ste 125, Fort Washington, PA 19034.

23.     On or about September 16, 2018, a point in time prior to the violations alleged herein, Defendant SHELLPOINT began servicing Plaintiff's Subject Loan on the Subject Property.

24.     On or about October 16, 2018, Defendant SHELLPOINT was voluntarily assigned all rights and interests of the Subject Loan pursuant to an Assignment of Mortgage recorded in the Official Records of Broward County, Instrument # 115389556.  Accordingly, SHELLPOINT is the creditor and owner of the Subject Loan.

25.      RESPA and Regulation X are applicable to all "federally related mortgage loans," which include any loans secured by a first or subordinate lien on residential real property upon which a one-to-four family structure is located and which is made in whole or in part by any lender that is either regulated by or whose deposits or accounts are insured by an agency of the Federal Government. *See* 12 C.F.R. § 1024.2. Accordingly, Plaintiff's Mortgage is a "federally related mortgage loan" as defined in Regulation X. *Id*.

4

26.     Defendant is a loan servicer of Plaintiff's "federally related mortgage loan," as those terms are defined in the RESPA, 12 U.S.C. § 2602(1), 12 U.S.C. § 2605(i)(2), and 12 C.F.R. § 1024.2(b) and a close-end consumer credit transaction secured by a consumer's principal dwelling as those terms are defined in TILA, 15 U.S.C. § 1641(f)(3) and § 1602.  Defendant receives payments from consumers and is responsible for distributing those payments to the investors who own the consumers' loans and, when the consumers' loans include escrow accounts, to the consumers' taxing authorities or insurance companies. Therefore, Defendant is a servicer within the meaning of RESPA. 12 C.F.R. § 1025.2(b). Accordingly, the Defendant is subject to the servicing requirements provided for in the RESPA and Regulation X.

## RESPA, REGULATION X, AND TILA, REGULATION Z,

27.     The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency that is authorized by Congress to supervise and enforce compliance of RESPA.  The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA, and the respective implementing regulations.

28.     In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), Public Law No. 111-203, 124 Stat. 1376 (2010).

29.     In January 2013, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States—known as "Regulation X" and codified as 12 C.F.R. § 1024.1, et seq.  Regulation X became effective on January 10, 2014.

30.     Moreover, on July 10, 2013, the CFPB issued mortgage rules under Regulation Z and Regulation X pursuant to its authority under the DFA, which became effective on January 10, 2014.

## VIOLATIONS OF RESPA AND REGULATION X

31.     "RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquiries." *McLean v. GMAC Mort. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010).

32.     "[RESPA] provides an action for damages against mortgage loan servicers who fail to respond to certain types of inquiries from borrowers."  *Medrano v. Flagstar Bank*, FSB, 704 F.3d 661, 663 (9th Cir. 2012).

33.     Importantly, 12 C.F.R. § 1024.35(b)(6) permits a borrower to submit an NOE regarding a servicer's "failure to provide an accurate payoff balance amount upon a borrower's request," - even though a request for a payoff balance is predominantly governed by 12 C.F.R. § 1026.36(c)(3).

34.     As amended, it is a violation of RESPA for a servicer to "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, *final balances for purposes of paying off the loan*, or avoiding foreclosure, or other standard servicer's duties." (Emphasis added) 12 U.S.C. § 2605(k)(1)(C). [1]

---

[1] 12 C.F.R. § 1024.35(e)(1) provides that:

1) a servicer must respond to an NOE by either "correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a phone number for further assistance"; or by
2) "conducting a reasonable investigation and providing the borrower with written notification that includes a statement that:

35.     It is also a violation of RESPA when a servicer of a federally related mortgage loan [such as SHELLPOINT], fails to comply with *any* obligations found by the Bureau of Consumer Financial Protection ("CFPB"). (See 12 U.S.C. § 2605(k)(1)(E)).  Certainly, such obligations include, but are not limited to, a servicer complying with the CFPB rules found under Regulation X, 12 C.F.R. § 1024.36(d).

36.     The sections of Regulation X which Plaintiff alleges Defendant violated by the Defendant were promulgated pursuant to § 6 of RESPA and are thus subject to RESPA's private right of action. *See* 78 Fed. Reg. at 10790 (describing the effect of promulgating a regulation pursuant to Section 6 of RESPA with respect to creating a private right of action). *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) (holding that "[i]f the servicer fails to respond adequately to the borrower's notice of error, then the borrow has a private right of action to sue the servicer under RESPA.").

37.     SHELLPOINT is obligated to respond to Plaintiff's and Class Members' inquiries pursuant to RESPA and Regulation X.  The fact that Plaintiff or any Class Members' loans have been foreclosed is irrelevant in this action.  SHELLPOINT is bound to the obligations of RESPA and Regulation X for a year after foreclosure.  *See Leak v. Ocwen Loan Servicing*, Case No. 5:17-cv-01890-MHH, 2021 U.S. Dist. LEXIS 16856 at \*16 (N.D. Ala. Jan. 29, 2021).

38.     Plaintiff is asserting claims for relief against Defendant for breaches of the specific rules under Regulation X as set forth below.

39.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §

---

i) the servicer has determined that no error occurred; ii) a statement of the reason or reasons for this determination; iii) a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination; and iv) information regarding how the borrower can request such documents, and contact information, including a phone number, for further assistance."

2605(f), for the claimed breaches and violations, and such action provides for remedies including actual damages, statutory damages, attorneys' fees and costs.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS

40. SHELLPOINT's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights, and in abdication, and contravention of Defendant's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA. As of the filing of this Complaint, SHELLPOINT has had several consumer complaints lodged against it nationally related to problems with mortgage servicing. *See, e.g., Dutcher v. Shellpoint Mortgage Servicing*, United States District Court for the Eastern District of Pennsylvania Case Number 2:21-cv-2062 (Class Action Settlement in case alleging FDCPA and California Rosenthal Act violations by sending misleading mortgage statements).

## FCCPA

41. The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

42. The FCCPA prohibits persons, including SHELLPOINT, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

43. Specifically, the FCCPA states that no person, including SHELLPOINT, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat. The FCCPA defines both "debt" and "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are

primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6). A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." § 559.55(8).

44.     The FCCPA provides for actual damages, classwide statutory damages, punitive damages, and attorneys' fees and expenses.

45.     SHELLPOINT is the servicer of Plaintiff's Subject Loan and the FCCPA Subclass (defined *infra*) members' loans.

46.     Plaintiff and the FCCPA Subclass members are each are "consumers" as defined by Florida Statute §559.55(8) as each is a natural person obligated or allegedly obligated to pay any debt, specifically, their respective loans.

47.     Plaintiff's and the FCCPA Subclass members' loans are each a "debt" as defined by Florida Statute §559.55(6) as each is an obligation or alleged obligation of Plaintiff or the FCCPA Subclass members to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of their homes.

## **STATEMENT OF FACTS**

### **Plaintiff's RFI**

48.     On December 1, 2021, Plaintiff, through her authorized Third-Party Agent, House Help, Inc., sent Defendant her First Request for Information ("RFI"), pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 and/or its implementing Regulations, Regulation X, 12 U.S.C. § 2605 and/or its implementing Regulations, Regulation X, 12 C.F.R. § 1024.36., including a request for an accurate payoff balance ("1st payoff request") pursuant to 12 C.F.R. § 1026.36(c)(3).  A copy of Plaintiff's December 1, 2021 RFI (with the 1st payoff request included);

and a copy the United States postal service's December 7, 2021 delivery confirmation of same, are attached hereto as Composite Exhibit "A".

49.     The RFI requested items from Plaintiff's "servicing file"[2].

50.     In addition to a payoff request, Plaintiff requested that Defendant provide certain information related to the Subject Loan, including the following:

a.     A complete account history;

b.     All notes created by servicer personnel reflecting communications with Plaintiff;

c.     Information and documents provided by Plaintiff to Defendant in accordance with 1024.35 or 1024.41;

d.     Loss mitigation correspondence between Plaintiff and NewRez;

e.     Information and documents provided exchanged between Plaintiff and New Rez;

f.     Copies of credit reports used to evaluate loss mitigation options;

g.     Appraisals and/or BPOs;

h.     Recent three (3) mortgage statements;

i.     First three (3) mortgage statements;

j.     Copies of any and all notices of any ownership transfer of the Loan to any other creditor, investor, or owner;

k.     The name, address, telephone number, website, email address and or any other information which identifies the alleged Owner(s) and Assignee(s) for the Loan;

l.     Accurate payoff balance/statement;

m.     A record of all property taxes that have been paid by the servicer; and

n.     Copy of the "Early Intervention" written notice as required by 12 C.F.R. 1024.39 (b)(1).

---

[2] See 12 C.F.R. § 1024.38(c)(2)(i)-(iv).

51.     On or before December 7, 2021, Defendant SHELLPOINT, received Plaintiff's RFI.

52.      Defendant Shellpoint did not respond to Plaintiff's RFI.

53.     When Defendant SHELLPOINT failed to respond to Plaintiff's December 1, 2021 RFI, Plaintiff sent Defendant a notice of error on January 13, 2022 ("January 13, 2022 NOE").  A copy of Plaintiff's January 13, 2022 NOE (due to SHELLPOINT's failure to respond to Plaintiff's December 1, 2021 RFI); and a copy the United States Postal Service's January 20, 2022 delivery confirmation of same, are attached hereto as Composite Exhibit "B".

54.     On February 11, 2022, Defendant provided an untimely response to Plaintiff's December 1, 2021, RFI.

55.     In its February 11, 2022, response cover letter, Defendant SHELLPOINT confirmed that the only items that were "enclosed" in its response are as follows:

        i)      "copies of the loan agreement signed at origination";
        ii)     "security instrument" for the property;
        iii)    "last three billing statements";
        iv)     "goodbye letter";
        v)      "welcome letter"; and the
        vi)     "loan history"

A copy of the cover letter explaining the contents of Defendant's February 11, 2002, response to Plaintiff's December 1, 2021, RFI, is attached hereto as Exhibit "C".

56.     In its February 11, 2022, response, Defendant SHELLPOINT failed to provide Plaintiff with copies of loss mitigation call/conversation logs, loss mitigation correspondence, early intervention notice, and other items requested by Plaintiff in her December 1, 2021, RFI.

**Plaintiff's Payoff Request:**

57.    Plaintiff's December 1, 2021, RFI also included a request for an accurate payoff balance ("1st payoff request") pursuant to 12 C.F.R. § 1026.36(c)(3).  *See* Composite Exhibit "A".

58.    On or before December 7, 2021, Defendant received Plaintiff's RFI, including Plaintiff's first request for an accurate payoff balance ("1st payoff request").

59.    Defendant failed to timely respond to Plaintiff's December 1, 2021, request for an accurate payoff balance within seven [7] business days.

60.    On or about January 13, 2022, Plaintiff sent SHELLPOINT a notice of error ("January 13, 2022 NOE").

61.    In her NOE, Plaintiff made a second request for an accurate payoff statement.

62.    Defendant received Plaintiff's January 13, 2022 NOE and second payoff request on January 20, 2022. A copy of Plaintiff's January 13, 2022 NOE (with the 2nd payoff request included); and a copy the United States postal service's January 20, 2022 delivery confirmation of same, were previously identified as Composite Exhibit "B."

63.    On January 31, 2022, Defendant provided Plaintiff a payoff statement and stated in its response to Plaintiff's January 13, 2022, NOE that it "apologize[d] for the delay in our response."

64.    Defendant SHELLPOINT also stated in its Response to Plaintiff's January 13, 2022, NOE that it "has not been able to determine that an error occurred".  Defendant also attached a January 31, 2022 document purporting to be the "payoff figures: that Plaintiff requested on December 1, 2021, and again on January 13, 2022. A copy of SHELLPOINT's January 31, 2022 response to Plaintiff's December 1, 2021 payoff request, is attached hereto as Exhibit "D".

65.   On or about February 15, 2022, Plaintiff sent SHELLPOINT a notice of error concerning their collection practices in providing inaccurate payoff statements ("Collection NOE")

66.   In her February 15, 2022, Collection NOE, Plaintiff requested that Defendant breakdown, itemize, or otherwise explain certain fees and charges that are listed on the January 31, 2022 payoff statement, including how Defendant derived apparent overstated interest figure and other estimated fees it was not entitled to.  A copy of Plaintiff's February 15, 2022, NOE; and a copy the United States Postal Service's February 22, 2022 delivery confirmation of same, are attached hereto as Composite Exhibit "E".

67.   Defendant received Plaintiff's Collection NOE on February 22, 2022 but did not respond or investigate that February 15, 2022 Collection NOE (hereinafter, "1st Collection NOE").

68.   In response to Plaintiff's unanswered 1st Collection NOE, on or about August 24, 2022, Plaintiff sent SHELLPOINT a second Collection NOE (hereinafter, "2nd Collection NOE").

69.   In Plaintiff's 2nd Collection NOE, Plaintiff asserted that Defendant's January 31, 2022 payoff statement, was "falsely & unfairly demanding Post-Judgment fees and cost that had not yet occurred."

70.   In Plaintiff's 2nd Collection NOE Plaintiff also asserted that Defendant failed to breakdown, itemize, or otherwise explain certain unidentified charges and fees that are demanded in the January 31, 2022 payoff statement.

71.   Defendant received Plaintiff's 2nd Collection NOE on August 31, 2022, but failed to respond to and/or investigate that August 24, 2022 NOE. A copy of Plaintiff's 2nd Collection NOE; and a copy the United States postal service's August 31, 2022 delivery confirmation of same, are attached hereto as Composite Exhibit "F".

13

72.    SHELLPOINT as a sophisticated and experienced servicer has actual knowledge of the types and amounts of fees it is allowed to charge pursuant to both the standard mortgage loan agreement and the servicing guidelines it is bound by.

73.    SHELLPOINT knows that demands for payment containing non-itemized amorphous charges, such as "Funds owed by borrower" or "Escrow Only Payment", or estimated fees, are misleading as it does not give consumers, such as Plaintiff and Class Members, the ability to knowledgably assess the validity of the claimed debt.

### Defendant SHELLPOINT'S
### Pattern of RESPA Non-Compliance

74.    Defendant SHELLPOINT has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605, and Plaintiff is entitled to recover statutory damages pursuant to 12 U.S.C. 2605(f)(b).

75.    As pled herein, Defendant's pattern of practice of non-compliance with Requests for Information ("RFI") and Notices of Error ("NOE") includes: failure to acknowledge receipt of RFI's, failure to timely respond to NOEs and RFIs, failure to respond to NOEs and RFIs, failure to properly and adequately respond to RFIs and NOEs, and failure to correct NOEs.

76.    Additionally, Plaintiff was harmed by Defendant's repeated failure to timely provide Plaintiff with an accurate payoff statement and other information and documents; and for its failure to respond to, and/or investigate Plaintiff's repeated NOEs.

77.    Plaintiff's harm is evidenced by the costs Plaintiff incurred sending the multiple NOEs - such as her time, postage, traveling, photocopying costs; and potentially, reasonable attorney's fees.   Additionally, Defendant's violations and Plaintiff's inability to accurately ascertain the character and amount of the debt owed have cost her the ability to properly payoff the debt through a private sale.

14

78.     Despite such costs, Plaintiff still did not timely and/or sufficiently receive the information to which she was legally entitled to - pursuant to RESPA and Regulation X.

79.     Indeed, when SHELLPOINT "failed to do that which it was obligated to do [under RESPA and Regulation X]" in response to Plaintiff's NOEs, the time and expense associated with Plaintiff's submissions of the NOEs "metamorphosed into damages." *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 725 (S.D. Ohio 2014).

80.     Pursuant to 12 U.S.C. § 2605(f)(1), Plaintiff is entitled to actual damages resulting from SHELLPOINT's failure to comply with Regulation X and RESPA.  Such damages includes, but are not limited to: (1) photocopying costs and postage costs incurred in mailing Plaintiff's first notice of error; and (2) photocopying costs, postage costs, incurred as a result of having to send a notice of error due to Defendant's failure to adequately respond to Plaintiff's first qualified written request.

81.     Plaintiff has also suffered actual damages in the form of emotional distress, anxiety, the constant fear of losing her home, worry, embarrassment, and anguish because of the ongoing failures of the Defendant to *timely* address Plaintiff request for an accurate payoff statement and NOEs.

82.     Plaintiff is entitled to actual and statutory damages, as well as the costs of this action, together with a reasonable attorney's fee as determined by the court and pursuant to 12 U.S.C. § 2605(f)(3) for violations under RESPA, Regulation X.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this action individually and on behalf of all individuals similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following classes defined as follows:

**NOE Class**: All persons in the United States who during the applicable statute of limitations period, (1) who had mortgage loans secured by residential real property obtained for personal, family, or household use, (2) whose mortgage loans are serviced by SHELLPOINT, (3) who either submitted to SHELLPOINT a notice or request, in the form of a QWR, RFI, NOE, and/or other covered inquiry, (4) to whom SHELLPOINT did not respond or failed to provide an adequate or complete response relative to the information requested and/or reasonably perform an investigation into the errors asserted therein based upon an exception not authorized by RESPA or Regulation X.

Excluded from the NOE Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the NOE Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

84.     **FCCPA Subclass:** Plaintiff also bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities (the "FCCPA Subclass"), defined as follows:

**FCCPA Subclass:** All loan borrowers in the State of Florida during the applicable statute of limitations period, (1) who had mortgage loans secured by residential real property located within the State of Florida obtained for personal, family, or household use, (2) whose mortgage loans are serviced by SHELLPOINT, (3) Who requested and received a payoff statement from  SHELLPOINT, and (4) who were charged for fees that were not enumerated or explained or charged fees that were estimates.

Excluded from the FCCPA Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the FCCPA Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

85.     Plaintiff reserves the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

86.     **Numerosity and Ascertainability**: Upon information and belief, the NOE Class, and the FCCPA Subclass (collectively, the "Classes") are each comprised of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical. The exact number of members in the Classes is presently unknown and can only be ascertained through discovery. Class members can easily be identified through Defendant's records or by other means.

87.     **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions. There are questions of law and fact common to the proposed Classes that predominate over any individual questions, including:

    a.   Whether SHELLPOINT failed to reasonably investigate NOEs;

    b.   Whether SHELLPOINT failed to provide substantive responses to Plaintiff's and NOE Class Members' inquiries in violation of RESPA and Regulation X;

    c.   Whether SHELLPOINT's payoff statements containing charges not being enumerated are therefore deceptive, misleading and violate the FCCPA;

    d.   Whether Plaintiff and Class Members suffered actual damages, and the measure and amount of those damages;

    e.   Whether Plaintiffs and Class members are entitled to recover statutory damages; and

    f.   The proper measure of disgorgement and/or actual and/or punitive damages and/or restitution, as well as other recovery to the class, including fees and costs.

88.     **Typicality**: Plaintiff's claims are typical of the claims of the Classes. On information and belief, Plaintiff and members of the NOE Class received similar or identical inadequate responses to QWRs, RFIs, and/or NOEs; or no responses at all. Further, on information

and belief, Plaintiffs and members of the Classes received nearly identical payoff statements generated from a form template containing similar or identical categories of charges. As such, Plaintiff and members of the Classes were subjected to and affected by a uniform course of conduct.

89.     **Adequacy**: Plaintiff will adequately represent the interests of the Classes and do not have adverse interests to the Classes. Plaintiff's counsel has extensive experience litigating consumer class actions.

90.     **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual members of the Classes prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

**COUNT I**

**VIOLATONS OF THE REAL ESTATE PROCEDURES ACT**
**12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k)**,
and **Regulation X, Section 12 C.F.R. § 1024.36(c))**
**(On behalf of Plaintiff and the NOE Class)**

91.     Plaintiff repeats and realleges paragraphs 1 through 80 with the same force and effect as though fully set forth herein.

92.     Section 1024.36(c) of Regulation X provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request." 12 C.F.R. § 1024.36.

93.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the

18

error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

94.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a)
provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by
an agent of the borrower." Supplement I to Part 1024.

95.     A servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and
      providing the borrower with a written notification of the
      correction, the effective date of the correction, and contact
      information, including a telephone number, for further
      assistance; or

(B)   Conducting a reasonable investigation and providing the
      borrower with a written notification that includes a statement
      that the servicer has determined that no error occurred, a
      statement of the reason or reasons for this determination, a
      statement of the borrower's right to request documents relied
      upon by the servicer in reaching its determination, information
      regarding how the borrower can request such documents, and
      contact information, including a telephone number, for further
      assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

96.     A servicer must respond to a notice of error in compliance with 12 C.F.R. §
1024.35(e)(1):

(B) Prior to the date of a foreclosure sale or within 30 days
    (excluding legal public holidays, Saturdays, and Sundays) after
    the servicer receives the notice of error, whichever is earlier, for
    errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding
    legal public holidays, Saturdays, and Sundays) after the servicer
    receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

97.     "A servicer of a federally related mortgage shall not...fail to take timely action to
respond to a borrower's requests to correct errors relating to allocation of payments, final balances

for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."
12 U.S.C. § 2605(k)(1)(C).

98.     A servicer of a federally related mortgage shall not "fail to comply with any other
obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate
to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

99.     Plaintiff and members of the NOE Class sent notices of error (the "NOEs) to
SHELLPOINT at the Designated Address alleging that SHELLPOINT committed errors in
failing to provide accurate payoff statements.

100.     SHELLPOINT failed to adequately respond to the NOEs in violation of 12
C.F.R. § 1024.35(e) as SHELLPOINT failed to admit and correct the alleged errors or otherwise
failed to perform a reasonable investigation into said errors, if SHELLPOINT responded at all.

101.     SHELLPOINT's failures to perform a reasonable investigation into and
otherwise properly respond to the errors alleged through NOEs constitute violations of 12 C.F.R.
§ 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and has caused Plaintiff and NOE Class members
to suffer actual damages as detailed, *supra*.

102.     SHELLPOINT's actions are part of a pattern and practice of behavior in
conscious disregard for Plaintiffs' and NOE Class members' rights and SHELLPOINT's
obligations under RESPA and Regulation X.

103.     SHELLPOINT's conduct as pleaded, *supra*, shows a conscious disregard for
Plaintiff and NOE Class members' rights and SHELLPOINT's obligations under RESPA and
Regulation X.

104.     Further, SHELLPOINT's conduct as pleaded, *supra*, are tantamount to a case of
a pattern or practice of noncompliance with the requirements of RESPA and Regulation X,

allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b)

105.    As a result of SHELLPOINT's actions, SHELLPOINT is liable to Plaintiff and NOE Class members for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

## COUNT II

### VIOLATIONS OF THE FLORIDA CONSUMER COLLECTIONS ACT
**(Fla. Stat. §559.72(9))**
**(On behalf of Plaintiff and the FCCPA Subclass)**

106.    Plaintiff repeats and realleges paragraphs 1 through 80 with the same force and effect as though fully set forth herein.

107.    At all times relevant to this action, SHELLPOINT is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

108.    Section 559.72, Florida Statutes, of the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts.

109.    SHELLPOINT is a "person" within the meaning of the FCCPA.

110.    The mortgage loans encumbering the properties of Plaintiff and FCCPA Subclass members, and being serviced by SHELLPOINT, are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

111.    The FCCPA creates a private right of action. See § 559.77, Fla. Stat.

112.    SHELLPOINT, in, *inter alia*, issuing inaccurate payoff statements, as pleaded *supra*, containing estimated charges or charges that were not yet incurred, charges that are not detailed or explained as to their origin or proper itemization, and charges for which Plaintiff and the members of the FCCPA Subclass were not able to decern the validity of, violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when SHELLPOINT knew that the debt was not legitimate, or asserting the existence of some other legal right when SHELLPOINT knew that right did not exist.

113.    SHELLPOINT is claiming, attempting and threatening to enforce a debt against Plaintiff by sending the inaccurate payoff statements, despite knowing the payoff statements were misleading.  *See* Exhibits E – G.

114.    Pursuant to the FCCPA, "[a]ny **person** who fails to comply with any provision of § 559.72 is liable for actual damages **and for additional statutory damages as the court may allow**, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the SHELLPOINT's liability for any additional statutory damages, the court shall consider the nature of the SHELLPOINT's noncompliance with § 559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

115.     The collection practices alleged in this complaint employed by SHELLPOINT hides the true character of the alleged debt owed by Plaintiff and the members of the FCCPA Subclass and impairs their ability to knowingly assess the validity of the alleged debt.

116.    SHELLPOINT knowingly sent the payoff statements and attempted to collect monies from Plaintiff and the members of the FCCPA Subclass through means that were clearly misleading on its face.

117.    SHELLPOINT's actions have caused Plaintiff and FCCPA Subclass members to suffer actual damages, further described, *supra*.

118.    As a result of SHELLPOINT's actions, SHELLPOINT is liable to Plaintiff and FCCPA Subclass members for actual damages, statutory damages, costs, and attorneys' fees. Fla. Stat. § 559.77(2).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gloria M. Gaviria, individually and on behalf of all others similarly situated, prays for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the NOE Class and FCCPA Subclass, each as defined, *supra*;

B.  Designating Plaintiff as representative of the NOE Class and FCCPA Subclass, and her undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiff, the NOE Class and FCCPA Subclass and against Defendant;

D.  Awarding Plaintiff, the NOE Class and FCCPA Subclass their actual damages;

E.  Awarding Plaintiff and the NOE Class their statutory damages as allowed under RESPA;

F.  Awarding Plaintiff and the FCCPA Subclass their statutory damages as allowed under the FCCPA;

G.  Awarding Plaintiff, the NOE Class and FCCPA Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

H.  Granting all such further and other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues.


Dated October 18, 2023


                                 Respectfully submitted,

                                 */s/ Scott D. Hirsch*
                                 Scott D. Hirsch
                                 **SCOTT HIRSCH LAW GROUP PLLC**
                                 Fla. Bar No. 50833
                                 6810 N. State Road 7
                                 Coconut Creek, FL 33073
                                 Tel: (561) 569-7062
                                 scott@scotthirschlawgroup.com

                                 *Counsel for Gloria M. Gaviria, and the Putative*
                                 *Classes*

24